# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| The Life Eye Company | ) | ASBCA No. 58422 |
| | ) | |
| Under Contract No. W91GFC-07-M-0754 | ) | |

APPEARANCE FOR THE APPELLANT: Mr. Hassanein K. Ahmad
Owner

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
Army Chief Trial Attorney
Erica S. Beardsley, Esq.
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE YOUNGER

This appeal concerns the adequacy of invoices tendered under a contract that included maintenance services. The Life Eye Company (Life Eye), the contractor, appeals the denial of its claim for payment of invoices. The government chiefly defends on the ground that Life Eye failed to adduce adequate proof that it provided the services for which it claims payment. Both parties elected to submit their cases on the record under our Rule 11. We deny the appeal.

## FINDINGS OF FACT

1. By date of 21 July 2007, Life Eye entered into Contract No. W91GFC-07-M-0754 (the contract) with the Joint Contracting Command – Iraq and Afghanistan (government) to provide an electrical generator and ancillary equipment, as well as maintenance service for one year, at Camp Taji, Iraq (R4, tab 1). Life Eye was the sole contractor identified on the contract (*id.*).

2. The contract required Life Eye to furnish "[m]aintenance service for one-year (to be paid monthly for a 12 month period: 21 August 2007 – 21 July 2008)" at a unit price of $750 per month, for a total price of $9,000 (R4, tab 1).

3. By date of 17 September 2008, Life Eye submitted its Invoice No. 331 to the contracting officer, in the amount of $9,000.00 for generator "[m]aintenance service for one-year (12 month period: 21 August 2007 – 21 July 2008)." The specified unit price was $750 per month for twelve months. Invoice No. 331 purported to be signed by Hassanein Khidir for Life Eye, and contained a space for countersignature by "CUSTOMER OF U.S[.] FORCES," but there is no signature in that space in the copy

in the Rule 4 file. (R4, tab 5) Following complaints by Life Eye that it had not received payment on its maintenance service invoices for a protracted period, (R4, tab 6), the contract specialist advised Life Eye by date of 5 April 2012 that she also needed "the form DD250 or other documentation that the contracting officer signed...showing that the maintenance service was provided and accepted during the period" covered by the invoice (R4, tab 9).

4. By date of 10 April 2012, Life Eye asserted in an email to the contract specialist that it had "paid four Invoices to Future Co. each Invoice for three months of the service and maint[e]nance." Life Eye added that "this company [is] one of [t]he best companies which work [in] this type of the work and you can ask them and they [will] answer[] you according to [their] records." (R4, tab 14) Life Eye forwarded to the contract specialist four invoices that it asserted it had received from Future Company for Generators (Future Company) and covering the eleven month period of 21 August 2007 through 21 July 2008 (R4, tab 15). Each of the four invoices – Nos. 0017, 0027, 0056, and 0067 – purported to be from Future Company to Life Eye for "[s]ervice and maintenance completed...on contract No. M-0754" for a three-month period. The four invoices aggregated $7,140. (R4, tab 15) However, Life Eye did not forward any DD 250 forms regarding the work that was the subject of Invoice No. 331 (R4, tabs 14-15).

5. Accordingly, by email to Life Eye dated 18 April 2012, the contract specialist stated that she still needed "documents from the...Government (Army) that are signed and dated showing that the work was completed and accepted." She added that she also needed "documents for the full cost of the maintenance each period, signed by [the]...Government official that received and accepted the work for each period." (R4, tab 19, *see also* R4, tab 23)

6. By email to the contract specialist dated 25 April 2012, Future Company stated that "[o]ur company has...[r]eceived the payment for [our] Invoice No. 0017, 0027, 0056, [and] 0067 [*see* finding 4] the Invoices Total Was $7,140.00" (R4, tab 30).

7. By email to Life Eye dated 25 April 2012, the contract specialist stated that she still needed documentation: (a) showing that Future Company's work was completed and accepted; and (b) showing the full cost for the maintenance for each period, signed by the government official that accepted the work (R4, tab 31).

8. Life Eye thereafter submitted documents entitled "Sub Monthly Invoices," purporting to be from Future Company to Life Eye (R4, tab 43). Three of the four Future Company invoices also purported to be countersigned by Army personnel on dates before commencement of contract performance (*id.*).

2

9. By email dated 1 May 2012, the contract specialist advised Life Eye that the documents from Future Company, together with Invoice No. 331 (*see* finding 3), "will allow me to move forward with resolving your payment issue" (R4, tab 48).

10. By date of 2 May 2012, Life Eye submitted to the contract specialist its Invoice No. 0094 for $9,000 for "General Maintenance on the contract No. W91GFC-07-0754 700 KVA Generator Included the filters and oil replace and water replace according to contract Instructions for 12 month from 21 Aug 2007 To 21 July 2008." This period was the same as that covered by Invoice No. 331 (*see* finding 3). As with Invoice No. 331, the specified unit price was $750 per month for twelve months. Invoice No. 0094 purported to be signed by Hassanein Khidir for Life Eye. (R4, tabs 49-50)

11. Life Eye included with Invoice No. 0094 an Electronic Funds Transfer Form for the bank account of a company identified as Alforat Heart Co. (R4, tabs 49, 50).

12. By email dated 29 May 2012, to the Army Contracting Command, the Defense Finance and Accounting Service (DFAS) returned the payment request for Invoice No. 0094 because the date the services were performed, and the date they were accepted, were both "Missing or invalid" (R4, tabs 72-73). The same day, the contract specialist emailed Life Eye, asking that it search its files for documents proving that "the maintenance was completed and accepted by the U.S. government for the period of August 21, 2007 through July 21, 2008" (R4, tab 74).

13. In response to numerous government requests for signed copies of Forms DD 250 showing government acceptance (*e.g.*, finding 3-5, 7, 12), Life Eye submitted two such forms by email dated 17 June 2012 to accompany its Invoice Nos. 36 and 45 (R4, tabs 107-08). Neither is credible. The DD 250 accompanying Invoice No. 36 covered a six-month period and was purportedly signed by CPT Ryan Maravilla, a Task Force Logistics Officer in Iraq from 7 March 2007 to 28 October 2007, but was purportedly signed by him on 22 January 2008 (R4, tab 108), when he was no longer in Iraq (finding 14). The other DD 250 accompanying Invoice No. 45 contains a space for the signature of a different officer, CPT Charles Lucker, but simply bears the signature "Charles" (R4, tab 108). By email dated 15 October 2012, the contracting officer denied payment of Life Eye's Invoice Nos. 36 and 45 (R4, tab 177).

14. The record includes the declaration of CPT Maravilla. He attests that he served in Iraq from 7 March 2007 to 28 October 2007 and reviewed Life Eye Invoice No. 36, which he purportedly countersigned as "CUSTOMER OF U.S. FORCES" on 23 January 2008 (finding 13). CPT Maravilla declares that: "Without a doubt, I could not have signed this document on 23 January 2008 since I was no longer in Iraq at this time. Although this document appears to contain my signature, this document is a forgery." (Gov't br., ex. 1)

3

15. By date of 30 October 2012, the contracting officer rendered her final decision denying Life Eye's claim for $9,000, covering Invoice Nos. 36 and 45 (*see* finding 13) (R4, tab 195). She treated Invoice Nos. 36 and 45 together to constitute the claim, and she denied it for insufficient evidence that the government accepted the services for which Life Eye billed (*id.* at 3). Life Eye thereafter brought this timely appeal.

## DECISION

This case chiefly presents questions of fact relating to the documentation that Life Eye submitted in support of its claim. The parties' arguments focus upon four categories of disputed submissions: Life Eye's Invoice No. 331; Future Company's invoices to Life Eye; Life Eye's Invoice No. 0094; and Life Eye's Forms DD 250.

In its complaint, Life Eye first disputes the contracting officer's decision regarding EFT information. With respect to the issue of documentation supporting its other submissions, Life Eye disputed the contracting officer's findings, asserting that it had submitted a signed invoice and a signed DD 250 covering the 12 months, as well as invoices establishing that it contracted with a service company to complete the work. Life Eye attached to its complaint copies of Invoice Nos. 36 and 45, as well as a copy of the 22 July 2008 DD 250, and four invoices from Future Company to Life Eye. (Compl. at 1)

For its part, the government insists that Life Eye has failed to prove that it provided the generator maintenance services for which it invoiced, or that the government accepted the services as compliant with the contract (gov't br. at 19). In particular, the government argues that Life Eye provided "inconstant and contradictory documents in support of its claim" (*id.* at 14). The government asserts that some of Life Eye's documents appear fabricated in that "the dates of the signatures are either before the contract was executed or the signator was not in Iraq on the date he allegedly signed the document" (*id.*).

In this *de novo* proceeding, Life Eye must prove its case by a preponderance of the evidence. *E.g., Wunderlich Contracting Co. v. United States*, 351 F.2d 956, 968 (Ct. Cl. 1965). By order dated 30 April 2014, both parties were afforded the opportunity to file briefs in this Rule 11 appeal, but only the government has done so.

A. *Invoice No. 331*

The government contends that it properly declined to pay Invoice No. 331 because it failed to comply with two contract requirements: the requirement that the service was "to be paid monthly" in $750 increments over the course of the year, for a total of $9,000 (finding 3); and the requirement for service for the one-year period from "21 August

4

2007 - 21 July 2008" (finding 2). With Invoice No. 331, by contrast, Life Eye sought the full $9,000 for eleven months, which aggregates $818.18 per month.

Given the evident discrepancy on the face of the invoice itself, we conclude that Life Eye has failed to establish entitlement on Invoice No. 331 by a preponderance of the evidence.

B. *Future Company Invoices*

In response to the government's request for documentation substantiating Invoice No. 331, demonstrating that the maintenance services were actually provided and accepted, Life Eye furnished four invoices from Future Company, its purported subcontractor (finding 8), after asserting that the work had actually been performed by Future Company (finding 4). Following a protracted series of exchanges, Future Company sent the government four "Sub Monthly Invoices" which it claimed to have submitted to Life Eye for the contract work (finding 8).

We conclude that Life Eye has not established entitlement to payment on the Future Company invoices by a preponderance of the evidence. Life Eye was the sole contractor; as a purported subcontractor, Future Company had no privity with the government (finding 1). *See, e.g., Rahil Exports*, ASBCA No. 56832, 10-1 BCA ¶ 34,355 at 169,647 (for lack of privity, subcontractors cannot assert claims against the government). Moreover, three of the four Future Company invoices purported to have been signed by Army personnel predate the 21 July 2007 contract award date (finding 8).

C. *Invoice No. 0094*

Life Eye submitted its Invoice No. 0094 for the same period and services as those covered by its unpaid Invoice No. 331 (finding 10). Life Eye furnished EFT information with Invoice No. 331, seeking payment to the account of Alforat Heart Co. (finding 11).

Life Eye takes the position that the contracting officer's rejection of its EFT information was erroneous because "the first payments which made on this contract [were] ((Cash))" (compl. at 1). For its part, the government alludes to "[t]he numerous and changing EFT documents submitted by appellant [that] further indicate that appellant provided erroneous and suspect information" (gov't br. at 18), justifying non-payment.

The EFT information relates to the desired payee's name and account for payment. It is otherwise irrelevant to Life Eye's entitlement to payment on the invoice. Life Eye was not entitled to payment on the invoice because, like Invoice No. 331, it covered a period and monthly amounts not contemplated by the contract.

5

We conclude that Life Eye has not established entitlement to Invoice No. 0094 by a preponderance of the evidence.

### D. *DD 250s*

Life Eye takes the position that it is entitled to payment of the full contract amount for the additional reason that it presented two "[s]igned DD 250[s] from the U.S. Government officer for the 12 months" (compl. at 1).

We have already concluded that the signatures on both DD 250s are not credible (finding 13). We accordingly conclude that Life Eye has not established entitlement to the full contract amount by virtue of submission of two signed DD 250s by a preponderance of the evidence.

### E. *Invoice Nos. 36 and 45*

The contracting officer treated Invoice Nos. 36 and 45 together to constitute the claim (finding 15). Assuming that they were the claim, the preponderance of the evidence does not support payment.

With respect to Invoice No. 36, the record contains the declaration of CPT Maravilla that the document purportedly countersigned by him is "a forgery," and he was no longer in Iraq when he supposedly countersigned it (finding 14). With respect to Invoice No. 45, it is supported by a DD 250 implausibly signed by "Charles," another officer (finding 13). We accordingly conclude that Life Eye has not established entitlement on Invoice Nos. 36 and 45 by a preponderance of the evidence.

### F. *Fraud Defense*

The government interposed the affirmative defense of fraud (answer at 10). Inasmuch as we deny the appeal on other grounds, we need not address the affirmative defense.

6

# CONCLUSION

The appeal is denied.

Dated: 19 January 2016

ALEXANDER YOUNGER
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58422, Appeal of The Life Eye Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

7